## bbUNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

DEAN A. PRATT,

                Plaintiff,

     v.

ANDREW SAUL,

               Defendant.

CIVIL ACTION NO. 3:20-CV-00417

(MEHALCHICK, MJ)

## MEMORANDUM

Plaintiff Dean A. Pratt brings this action under sections 205(g) of the Social Security Act, 42 U.S.C. §§ 405(g), 1383(c)(3) (incorporating § 405(g) by reference), seeking judicial review of the final decision of the Commissioner of Social Security ("the Commissioner") denying his applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. (Doc. 1). The matter has been referred to the undersigned United States Magistrate Judge on consent of the parties, pursuant to the provisions of 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. (Doc. 9; Doc. 10).

For the reasons set forth below, and upon detailed consideration of the arguments raised by the parties in their respective briefs, it is hereby ordered that the Commissioner's decision to deny Pratt benefits is **AFFIRMED**. **FINAL JUDGMENT** is entered in favor of the Commissioner. The Clerk of Court is directed to **CLOSE** this case.

I.   **BACKGROUND AND PROCEDURAL HISTORY**

Pratt is an adult individual born May 6, 1980, who was 34 years old at the time of his alleged onset date of disability – June 1, 2014. (Doc. 14-15, at 5; Doc. 14-15, at 23). Pratt's

age at the onset date makes him a "younger person" under the Social Security Act. 20 C.F.R. §§ 404.1563(c), 416.963(c).

On January 16, 2015, and February 26, 2015, Pratt protectively filed applications under Title II and Title XVI of the Social Security Act, respectively, claiming disability beginning June 1, 2014. (Doc. 14-15, at 24-25). The Social Security Administration initially denied the applications on May 21, 2015, prompting Pratt's request for a hearing, which Administrative Law Judge (ALJ), Paula Garrety, held on April 18, 2017. (Doc. 14-2, at 31). In an August 16, 2017 written decision, the ALJ determined that Pratt is not disabled and therefore not entitled to benefits or income under Title II or Title XVI. (Doc. 14-2, at 44). The Appeals Council subsequently denied Pratt's request for review. (Doc. 14-2, at 2). Pratt appealed to the United States District Court for the Middle District of Pennsylvania. (Doc. 14-15, at 5; Doc. 14-18, at 44). The Court remanded the case and vacated the prior decision due to the ALJ's inaccurate description of Pratt's height and weight in reference to his level of obesity and the ALJ's improper address of the treating physician's opinion and statements from a third party. (Doc. 14-15, at 5; Doc. 14-18, at 36; Doc. 14-18, at 61-62). The ALJ conducted a new hearing to address the errors on November 20, 2019. (Doc. 14-15, at 5). In a written decision dated December 23, 2019, the ALJ determined that Pratt is not disabled and therefore not entitled to benefits or income under Title II or Title XVI. (Doc. 14-15, at 24-25).

On March 11, 2020, Pratt commenced the instant action. (Doc. 1). The Commissioner responded on August 27, 2020, providing the requisite transcripts from Pratt's disability proceedings. (Doc. 13; Doc. 14). The parties then filed their respective briefs, with Pratt raising one principal base for reversal or remand. (Doc. 21; Doc. 25; Doc. 30).

II.  **STANDARD OF REVIEW**

To receive benefits under Titles II or XVI of the Social Security Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1509, 416.909. To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in significant numbers in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1505(a), 416.905(a).[1] Additionally, to be eligible under Title II, a claimant must have been insured for disability insurance benefits. 42 U.S.C. § 423(a)(1)(a); 20 C.F.R. § 404.131.

A.  **ADMINISTRATIVE REVIEW**

In evaluating whether a claimant is disabled as defined in the Social Security Act, the Commissioner follows a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520(a), 416.920(a). Under this process, the Commissioner must determine, in sequence: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do past relevant work, considering his or her residual functional capacity (RFC); and (5) whether the claimant is able to do any other work that

---

[1] A "physical or mental impairment" is defined as an impairment resulting from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

exists in significant numbers in the national economy, considering his or her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a), 416.920(a). The claimant bears the initial burden of demonstrating a medically determinable impairment that prevents him or her from doing past relevant work. 20 C.F.R. §§ 404.1512(a), 416.912(a). Once the claimant has established at step four that he or she cannot do past relevant work, the burden then shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national economy that the claimant could perform that are consistent with his or her RFC, age, education, and past work experience. 20 C.F.R. §§ 404.1512(a)(1), 416.912(a)(1).

B. JUDICIAL REVIEW

The Court's review of the Commissioner's final decision denying a claimant's application for benefits is limited to determining whether the findings of the final decisionmaker are supported by substantial evidence in the record. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotations omitted). The quantum of proof is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial if the ALJ ignores countervailing evidence or fails to resolve a conflict created by such evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). In an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent

conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966).

The question before the Court, therefore, is not whether Pratt was disabled, but whether the Commissioner's determination that Pratt was not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence."); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The [Commissioner]'s determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). If "the ALJ's findings of fact . . . are supported by substantial evidence in the record," the Court is bound by those findings. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).

## III.   **THE ALJ'S DECISION**

In a decision dated December 23, 2019, the ALJ determined that Pratt "has not been under a disability, as defined in the Social Security Act, from June 1, 2014, through the date of this decision." (Doc. 14-15, at 24). The ALJ reached this conclusion after proceeding through the five-step sequential analysis provided in 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a).

A.   STEP ONE

At step one, an ALJ must determine whether the claimant is engaging in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If a claimant is engaging in SGA, the claimant is not disabled, regardless of age, education, or work experience. 20 C.F.R. §§ 404.1520(b), 416.920(b). SGA is defined as work activity requiring significant physical or mental activity and resulting in pay or profit. 20 C.F.R. §§ 404.1572, 416.972. The ALJ must consider only the earnings of the claimant. 20 C.F.R. §§ 404.1574(a)(2), 416.974(a)(2). Here, the ALJ determined that "[Pratt] ha[d] not engaged in [SGA] since June 1, 2014, the alleged onset date." (Doc. 14-15, at 7). Thus, the ALJ proceeded to step two.

B.   STEP TWO

At step two, the ALJ must determine whether the claimant has a medically determinable impairment – or a combination of impairments – that is severe and meets the 12-month duration requirement. 20 C.F.R. §§ 404.1502(a)(4)(ii), 416.920(a)(4)(ii). If the ALJ determines that a claimant does not have an impairment or combination of impairments that significantly limits the claimant's "physical or mental ability to do basic work activities," the ALJ will find that the claimant does not have a severe impairment and is therefore not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If, however, a claimant establishes a severe impairment or combination of impairments, the ALJ proceeds to consider step three. Here, the ALJ found that Pratt had eight severe, medically determinable impairments: (1) diabetes mellitus, (2) degenerative disc disease, (3) obesity, (4) obstructive sleep apnea, (5) asthma, (6) depression, (7) a learning disability, and (8) a mild intellectual disability learning disorder. (Doc. 14-15, at 8).

C.   STEP THREE

At step three, the ALJ must determine whether the severe impairment or combination of impairments meets or equals the medical equivalent of an impairment listed in the version of 20 C.F.R. § Pt. 404, Subpt. P, App. 1 that was in effect on the date of the ALJ's decision. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1525, 404.1526, 416.920(a)(iii), 416.925, 416.926. The sections in this appendix are commonly referred to as "listings." If the ALJ determines that the claimant's impairment or impairments meet a listing, then the claimant is considered disabled, otherwise the ALJ must proceed to and analyze the fourth step of the sequential analysis. 20 C.F.R. §§ 404.1520(d), 416.920(d). Here, the ALJ determined that Pratt did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). (Doc. 14-15, at 8).

D. RESIDUAL FUNCTIONAL CAPACITY

Between steps three and four, the ALJ determines the claimant's residual functional capacity (RFC), crafted upon consideration of all the evidence presented. At this intermediate step, the ALJ considers all the claimant's symptoms and "the extent to which [they] can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. §§ 404.1529(a), 416.929(a). This involves a two-step inquiry according to which the ALJ must (1) determine whether an underlying medically determinable medical impairment or impairments could reasonably be expected to produce the claimant's symptoms; and, if so, (2) evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to

determine the extent to which they limit the claimant's functional limitations. *See* 20 C.F.R. §§ 404.1529(b)-(c), 416.929(b)-(c).

After weighing Pratt's written and oral statements against other evidence in the record, the ALJ found that Pratt's impairments could reasonably be expected to cause the alleged symptoms, but that his statements about the intensity, persistence, and the limiting effects of the symptoms were not accepted to the extent Pratt claims to be inhibited. (Doc. 14-15, at 14). The ALJ then went on to detail Pratt's medical records and treatment history. (Doc. 14-15, at 14-22). Considering all evidence in the record, the ALJ determined that Pratt has the RFC "to perform light work as defined in 20 CFR 404 1567(b) and 416.967(b)[,] except" Pratt is limited to work that does not require reading above the fifth grade level; that has no exposure to loud noise; that has a clean and temperate environment; that requires no more than frequent operations of foot controls; that requires no more than the occasional climbing of stairs, balancing, stopping, kneeling, or crawling; that does not require exposure to heights or hazards; and that does not require detailed instructions. (Doc. 14-15, at 13).

E. STEP FOUR

Step four requires the ALJ to determine whether the claimant had, during the relevant period, the RFC to perform the requirements of his or her past relevant work regardless of the claimant's age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). Past relevant work is work that the claimant has done within the past 15 years, that was substantial gainful activity, and that lasted long enough for the claimant to learn how to do the work. 20 C.F.R. §§ 404.1560(b), 416.920(a)(4)(iv). The ALJ considers whether the claimant retains the capacity to perform the particular functional demands and job duties of the past relevant work, either as the claimant actually performed it or as

ordinarily required by employers throughout the national economy. *Garibay v. Comm'r Of Soc. Sec.*, 336 F. App'x 152, 158 (3d Cir. 2009) (quoting SSR 82–6). "If the claimant can perform his past relevant work despite his limitations, he is not disabled." *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 202 (3d Cir. 2019) (citing 20 C.F.R. § 404.1520(a)(4)(iv)); *see also* 20 C.F.R. § 416.920(a)(4)(iv). Here, after comparing Pratt's RFC to the demands of Pratt's past relevant work as a paint sprayer and operator, forklift operator, and smelter the ALJ found that Pratt was unable to perform any past relevant work. (Doc. 14-15, at 23).

F. STEP FIVE

At step five, the ALJ considers the claimant's age, education, and work experience to determine whether the claimant can make the adjustment to other work. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). A claimant who can adjust to other work is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). Here, considering Pratt's age, education, work experience, and RFC, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Pratt could have performed. (Doc. 14-15, at 23). In making this determination, the ALJ relied on the expertise of the vocational expert, who testified that Pratt could have performed the requirements of representative occupations, such as a bagger/packager, with 331,985 jobs in the national economy; a stuffer, with 230,760 jobs in the national economy; and a sorter, with 115,320 jobs in the national economy. (Doc. 14-15, at 24).

Given the foregoing analysis, the ALJ determined that Pratt was not disabled and denied his applications for benefits. (Doc. 14-15, at 24-25).

IV.   **DISCUSSION**

On appeal, Pratt challenges the ALJ's RFC assessment. (Doc. 21, at 3-17). Pratt alleges that the ALJ has failed to provide "substantial evidence that [Pratt] can perform alternative jobs which exist in significant numbers." (Doc. 21, at 4). Specifically, Pratt contends that the ALJ erred in weighing the opinion evidence of record pursuant to the appropriate legal standards. (Doc. 21, at 3-17). In alleging this argument, Pratt contends that the ALJ failed to give controlling weight to the opinion of his treating physician, Dr. Haley. (Doc. 21, at 6). Pratt further contends that the ALJ erred in giving little and partial weight to the opinions of the psychological examiners, Dr. McNelis and Dr. LaJeunesse, respectively. (Doc. 21, at 15-16). In response, the Commissioner maintains that the ALJ's decision that Pratt could engage in a range of light work is supported by substantial evidence and reflects a proper application of the law and regulations. (Doc. 25, at 1-2).

For the reasons set forth below, the Commissioner's decision to deny Pratt benefits will be **AFFIRMED** and **FINAL JUDGMENT** shall be entered in favor of the Commissioner.

A.   SUBSTANTIAL EVIDENCE SUPPORTS THE ALJ'S CONSIDERATION OF THE OPINION EVIDENCE OF RECORD.

Pratt's arguments on appeal largely concern the ALJ's weighing of the opinion evidence of record. Specifically, Pratt argues that the ALJ erroneously rejected the opinions of Dr. Haley, Dr. McNelis, and Dr. LaJeunesse. (Doc. 21, at 2-3,  6, 14, 15). The Commissioner contends that the ALJ evaluated Pratt's treating physician's "opinion in accordance with governing regulations and reasonably determined that it warranted less

weight" and that the "record does not support marked and extreme limitations" as opined by Dr. McNelis and Dr. LaJeunesse. (Doc. 25, at 16, 31).

The ALJ – not treating or examining physicians or State agency consultants – must make the ultimate disability and RFC determinations. *Chandler v. Comm'r of Soc. Sec.,* 667 F.3d 356, 361 (3d Cir. 2011). "[RFC is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 n. 1 (3d Cir. 1999)). "[O]nce the ALJ has made this [RFC] determination, [a court's] review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence." *Black v. Berryhill*, No. 16-1768, 2018 WL 4189661, at *3 (M.D. Pa. Apr. 13, 2018).

When determining a claimant's RFC, the ALJ must consider all the evidence of the record and, regardless of its source, "evaluate every medical opinion...receive[d]." *Burnett,* 220 F.3d at 121 (internal citations omitted); *see* 20 C.F.R. §§ 404.1527(c), 416.927(c); *see also* SSR 96-8P, 1996 WL 374182, at *2 ("RFC is assessed by adjudicators at each level of the administrative review process based on all of the relevant evidence in the case record, including information about the individual's symptoms and any 'medical source statements.'"). "A cardinal principal guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgement based on a continuing observation of the patient's condition over a prolonged period of time.'" *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (quoting *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999)); *see also Rocco v. Heckler*, 826 F.2d 1348, 1350 (3d Cir. 1987). However, a "treating source's opinion is not entitled to controlling weight if it is

'inconsistent with the other substantial evidence in [the] case record.'" *Scouten v. Comm'r Soc. Sec.*, 722 F. App'x 288, 290 (3d Cir. 2018) (alteration in original (quoting 20 C.F.R. § 404.1527(c)(2)). Further, an ALJ may give an opinion less weight or no weight if it does not present relevant evidence or a sufficient explanation to support it, or if it is inconsistent with the record as a whole. 20 C.F.R. §§ 404.1527(c), 416.927(c). If a conflict exists in the evidence, "the ALJ may choose whom to credit but 'cannot reject evidence for no reason or the wrong reason.'" *Plummer,* 186 F.3d at 429 (quoting *Mason,* 994 F.2d at 1066); *see also Morales,* 225 F.3d at 317.

It is the duty of the ALJ to explain the rationale for the weight afforded to each medical opinion, as this allows for meaningful judicial review. *Plummer,* 186 F.3d at 429 ("The ALJ must consider all the evidence and give some reason for discounting the evidence that [she] rejects." (quoting *Mason,* 994 F.2d at 1066)). The ALJ, however, should refrain from rejecting all medical opinions in favor of his or her own lay interpretation of the medical evidence. *Slotcavage v. Berryhill*, No. 18-1214, 2019 WL 2521634, at *1 (M.D. Pa. June 3, 2019).

### 1. Dr. Matthew Haley's Opinion

Pratt argues that the ALJ erred in not assigning significant weight to the opinion of his treating physician, Dr. Haley, pursuant to 20 C.F.R. §§ 404.1527(c)(2)), 416.927(c)(2). (Doc. 21, at 6). The ALJ concluded that Pratt was capable of performing "light work," in part because the opinion of Dr. Haley was given little weight. (Doc. 14-15, at 22). Pratt asserts that the ALJ should have afforded greater weight to Dr. Haley's opinion, which provided evidence that Pratt was disabled and thus unable to perform light work with limitations. (Doc. 21, at 4, 6). Pratt contends that the ALJ, in affording little weight to Dr. Haley's opinion, did not sufficiently explain her reasoning. (Doc. 21, at 7, 13). Pratt states that the ALJ failed to "recite

all relevant, probative evidence, and explain why she rejected evidence that supports [Dr. Haley's] opinion." (Doc. 21, at 7).

Specifically, Pratt states that the ALJ failed to "explain why normal muscle tone and normal gait [along with other examination findings] are inconsistent with Dr. Haley's opinion and [that the ALJ] cites no medical authority to support such a conclusion . . . substitut[ing] her lay judgment for that of an experienced medical professional." (Doc. 21, at 7-8, 10). Pratt additionally asserts that the ALJ did not "adequately address that [Pratt's] obesity supports the limitations identified by Dr. Haley." (Doc. 21, at 8). Pratt argues that the ALJ "does not explain why Dr. Haley's opinion is not reasonably supported by the findings in [Dr. Haley's] treatment notes . . . [i]n particular, findings of muscle spasms and reduced range of motion [that] are identified by the Commissioner as signs supportive of allegations of pain." (Doc. 21, at 8). Pratt also states that the ALJ, again, failed to properly assess Pratt's Body Mass Index, equating to obesity, and contends that the ALJ failed to rationalize "how she weighed the diagnostic studies . . . includ[ing] an x-ray of the lumbar spine dated August 15, 2014 that demonstrated [medical issues]." (Doc. 21, at 10). Additionally, Pratt explains that "the ALJ's blanket citation to Exhibit 23F" is insufficient and has been viewed  out of context. (Doc. 21, at 10). Pratt also contends that the ALJ failed to address other findings that would support Pratt's disability, including physical therapy evaluations and pain management records. (Doc. 21, at 10-11). Additionally, Pratt states that the ALJ's focus on certain evidence is in err and that she omits supportive findings by another physician's opinion. (Doc. 21, at 12). Finally, Pratt states that the ALJ erred in considering Pratt's level of treatment and "rel[ied] on her lay judgment of what type of medical treatment is appropriate for an individual with Mr. Pratt's conditions." (Doc. 21, at 12).

In this case, the Court finds that despite Pratt's assertions, substantial evidence supports the ALJ's consideration of Dr. Haley's opinion. Here, the ALJ considered Dr. Haley's opinions and accorded them "little weight." (Doc. 14-15, at 22). In a report from May 10, 2017, Dr. Haley opined that Pratt experiences chronic low back pain and a burning groin with  limited range of motion in his back. (Doc. 14-14, at 102). Dr. Haley noted that Pratt takes pain medications that lower his pain levels to a two out of five (2/5) when he is at rest. (Doc. 14-14, at 102; Doc. 21, at 6). Dr. Haley assessed that Pratt's symptoms seldom interfere with his attention or concentration; that he could walk four city blocks without rest, that he could sit and stand for five minutes to an hour at a time; and sit, stand, and walk for two hours in an 8-hour workday. (Doc. 14-14, at 103-104; Doc. 21, at 6). Dr. Haley further stated that Pratt would need a job that permits shifting positions at will from sitting, standing or walking; would need to take unscheduled 30-minute breaks three to four times during an 8-hour workday, and anticipated that Pratt would be absent from work more than three times a month. (Doc. 14-14, at 105; Doc. 21, at 6). Finally, Dr. Haley stated that Pratt did not need to elevate his legs with prolonged sitting; did not need to use a cane or other assistive device when engaging in occasional standing or walking; did not have significant limitations in doing repetitive reaching, handling, or fingering; and would experience both good and bad days. (Doc. 14-14, at 105).

The ALJ, however, accorded "little weight" to Dr. Haley's opinion. (Doc. 14-15, at 22). The ALJ explained that Dr. Haley's opinion is

> inconsistent with other objective, competent evidence of record, including examination findings from Dr. Haley, which include normal diabetic foot examinations, normal muscle tone and normal gate . . . and examination findings from other treating sources that found a normal gait, ability to stand on his heels and toes, full (5 out of 5) strength in the groups of upper extremities,

- 14 -

including grip, and in the groups of the lower extremities . . . . The opinion is also inconsistent with the objective clinical findings from the physical consultative examination, which included negative straight leg-raise testing, full muscle strength in the upper and lower extremities with no negative straight leg-raise testing, full muscle strength in the upper and lower extremities with no atrophy, stable joints, normal and equal reflexes in the upper and lower extremities, no sensory deficits, full grip strength and intact hand and finger dexterity . . . . Further, this opinion is inconsistent with the conservative level of treatment received by the claimant and the finding in Dr. Haley's own records that the conditions have been stable . . . . As such, this opinion is given little weight because it is not supported or consistent with multiple examples of objective evidence from multiple providers, including Dr. Haley's own records.

(Doc. 14-15, at 22).

Here, the ALJ provided legally and factually sufficient reasons for the weight she afforded to the opinions of Dr. Haley and based her conclusions on substantial evidence. (Doc. 14-15, at 22). The ALJ reasoned that, while she acknowledged Dr. Haley's treating relationship with Pratt, such recommended limitations were inconsistent with other objective findings along with some of the examination findings from Dr. Haley. (Doc. 14-15, at 22). For example, Pratt exhibited normal gait, full strength in the upper extremities, and normal muscle tone. (Doc. 14-15, at 22). The ALJ further reasoned that the medical record reflected that Pratt's treatment has been conservative and that his conditions have been stable. (Doc. 14-15, at 22). It is the right and the responsibility of the ALJ to make such assessments and the Court finds that substantial evidences supports this determination. *See Burnett*, 220 F.3d at 121 (the ALJ must consider all the evidence and "evaluate every medical opinion...receive[d]"). Pratt's argument simply asks the Court to re-weigh the evidence, which this Court cannot do. *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005) ("In the process of reviewing the record for substantial evidence, we may not 'weigh the evidence or substitute our own conclusions for those of the fact-finder.'" (quoting *Williams v. Sullivan*, 970 F.2d 1178,

1182 (3d Cir. 1992))). Because the Court cannot re-weigh the evidence, the Court finds that the ALJ has not erred in assigning "little weight" to the opinions of Dr. Haley. *See Rutherford*, 399 F.3d at 552; (Doc. 14-15, at 22).

### 2. Dr. Kirsten McNelis's Opinion and Dr. Charles LaJeunesse's Opinion

Similarly, the ALJ did not err in weighing the opinions of Dr. Kristen McNelis or Dr. Charles LaJeunesse. As mentioned supra, an ALJ may give an opinion less weight or no weight if the opinion does not present relevant evidence or a sufficient explanation to support it, or if the opinion is inconsistent with the record as a whole. 20 C.F.R. §§ 404.1527(c), 416.927(c). It is the duty of the ALJ, however, to explain the rationale for the weight afforded to each medical opinion, as this allows for meaningful judicial review. *Plummer*, 186 F.3d at 429.

Pratt argues that the ALJ "erroneously substituted her lay judgment for that of a medical professional, engaging in pure speculation." (Doc. 21, at 15-16). Specifically, Pratt states that "Dr. McNelis's opinion is fully consistent with Mr. Pratt's history of special education" and that the ALJ improperly found that "the ability to take intelligence testing without emotional distress is inconsistent with Dr. LaJeunesse's opinion." (Doc. 21, at 15, 16).

In a report from May 13, 2015, Dr. McNelis opined that Pratt exhibited marked limitations in understanding and remembering simple instructions, in carrying out simple instructions, and in his ability to make judgments on simple work-related decisions. (Doc. 14-12, at 25). Dr. McNelis also stated that Pratt exhibited extreme limitations in understanding and remembering complex instructions, in his ability to carry out complex instructions, and in his ability to make judgments on complex work-related decisions. (Doc. 14-12, at 25). Dr.

McNelis noted marked limitations in Pratt's ability to interact appropriately with the public, supervisors, and co-workers and extreme limitations in his ability to respond appropriately to usual work situations and to changes in a routine work setting. (Doc. 14-12, at 26). Dr. McNelis supported these findings with observations that Pratt appeared "older than his stated age," "poorly groomed," and made limited eye contact. (Doc. 14-12, at 19). Dr. McNelis also noted that Pratt "was polite and cooperative throughout the evaluation [and h]is manner of relating and social skills appeared limited." (Doc. 14-12, at 19). Dr. McNelis observed that Pratt had "a mild to moderate articulation problem and tended to mumble when he spoke . . . [and that] he evidenced some word finding difficulties [but h]is receptive language appeared adequate." (Doc. 14-12, at 20). Dr. McNelis documented Pratt's thought processes stating that "[t]here did not appear to be any evidence of hallucinations, delusions, or paranoia in the evaluation setting. However, [Pratt] appeared to evidence a significant thought processing delay [that] was unclear if . . . [it was] related to his general lethargy during the evaluation or to a specific thought processing deficit." (Doc. 14-12, at 19). Dr. McNelis also stated that Pratt's "affect was restricted;" his mood "appeared neutral;" his sensorium, attention, concentration, and recent memory skills were "mildly impaired;" "he was oriented to person, place and time;" "his remote memory skills appeared intact;" his insight was "limited;" and his judgment was "fair." (Doc. 14-12, at 20). Additionally, Dr. McNelis noted that Pratt's cognitive functioning "appeared to function in the borderline cognitive range [and] his general fund of information was somewhat limited." (Doc. 14-12, at 20). Dr. McNelis observed a cooperative, relaxed, and comfortable behavior from Pratt. (Doc. 14-12, at 21). Pratt was able to recall and understand instructions, used "a trial and error approach" when responding to questions, and worked slowly in his evaluation. (Doc. 14-12, at 20). Pratt's "attention and

- 17 -

concentration were good" and he "did not evidence significant emotional distress during the evaluation." (Doc. 14-12, at 21). Pratt scored a 67 on the administered Full-Scale IQ test, demonstrating that Pratt "is currently functioning within the extremely low or intellectually disabled range." (Doc. 14-12, at 21). Dr. McNelis also noted that the "Full Scale IQ may underestimate [Pratt's] current level of functioning" due to "a possible processing deficit or cognitive impairment." (Doc. 14-12, at 21).

The ALJ afforded the opinion of Dr. McNelis "little weight" finding that

> [t]he level of limitation opined is not consistent with her own examination findings, which indicated mild impairment to memory and attention, fair judgment and polite and cooperative attitude. Dr. McNelis also indicated the claimant's cognitive function was in the borderline range and she questioned the intelligence testing based on the results as possibly being [an] underestimate [of Pratt's] current level of functioning. In addition, the opinion is simply not consistent with clinical findings in the claimant's own treatment records, which indicate a euthymic mood, appropriate affect, clear speech, neat and well-groomed appearance and clear concise and coherent speech . . . . Additionally, an individual with such a degree of limitation as assessed by Dr. McNelis could be expected to have significant observable functional limitations that would be noted in the objective findings of a treating provider, but such findings are not demonstrated over a longitudinal period. Likewise, one would expect that an individual with this limited level of functioning would require more intensive treatment, which is also not found in the longitudinal record.

(Doc. 14-15, at 19).

On August 30, 2019, Dr. LaJeunesse evaluated Pratt and stated that Pratt had mild limitations in understanding and remembering simple instructions, in carrying out simple instructions, and in his ability to make judgments on simple work-related decisions. (Doc. 14-22, at 30). Pratt exhibited moderate limitations in understanding and remembering complex instructions, in his ability to carry out complex instructions, and in his ability to make judgments on complex work-related decisions. (Doc. 14-22, at 30). Additionally, Dr. LaJeunesse noted marked limitations in Pratt's ability to interact appropriately with the

public, supervisors, and co-workers and in his ability to respond appropriately to usual work situations and to changes in a routine work setting. (Doc. 14-22, at 31). Dr. LaJeunesse supported these findings with observations that Pratt "appeared the same as his given age, . . . well groomed, . . . [and exhibited normal p]osture . . . [m]otor behavior . . . [and e]ye contact. (Doc. 14-22, at 27). Dr. LaJeunesse also noted that Pratt "was cooperative [and that his m]anner of relating, social skills, and overall presentation were adequate." (Doc. 14-22, at 26). Dr. LaJeunesse observed that Pratt had "fluent" speech, his "[q]uality of voice was clear, [and that his e]xpressive and receptive language skills [were] adequate." (Doc. 14-22, at 27). Dr. LaJeunesse also documented Pratt's thought processes stating that "[h]e was coherent and goal directed with no evidence of hallucinations, delusions, or paranoia in the evaluation setting." (Doc. 14-22, at 27). Dr. LaJeunesse stated that Pratt's affect was "appropriate;" his mood "[e]uthymic;" his sensorium "[c]lear;" and that "[h]e was oriented to person, place and time." (Doc. 14-22, at 27). Dr. LaJeunesse noted that Pratt "could count and do simple calculations;" had   "[i]mpaired" recent and remote memory skills; had fair insight and judgment; and had "below average" intellectual functioning. (Doc. 14-22, at 27). Dr. LaJeunesse observed a "cooperative and friendly, relaxed and comfortable" behavior from Pratt. (Doc. 14-22, at 27). Pratt was able to recall and understand instructions, appeared tired and labored resulting in a very slow responding speed, and exhibited "attention and concentration [that] were okay." (Doc. 14-22, at 27). Pratt "did not evidence significant emotional distress during the evaluation." (Doc. 14-22, at 27). Pratt scored a 61 on the administered Full-Scale IQ test, demonstrating a mild intellectual disability, dysthymia, and social anxiety disorder. (Doc. 14-22, at 28-29). Dr. LaJeunesse also noted that "[i]t is clear

that the claimant is best in the area of Perceptual Reasoning, and [is] worst i[n the area of]

Working Memory. (Doc. 14-22, at 29).

      The ALJ afforded "partial weight" to the opinions of Dr. LaJeunesse. (Doc. 14-15, at

20). The ALJ stated that

> [t]he opinions regarding [Pratt's] ability to perform simple and complex
> instructions and decisions are given significant weight because they are
> supported by clinical findings from the examination, the clinical findings from
> the prior examination that found only mild impairment to memory and
> attention and with the claimant's educational records, which show an ability to
> read at the 5th grade level with 90% comprehension . . . . However, the marked
> limitations are given little weight. The limitations in social interaction are not
> consistent with the records, which show the claimant to be polite and
> cooperative. Further, the claimant's own treatment records do not show reports
> of symptoms related to interacting with others or treatment other than for
> depression . . . . In terms of the claimant's ability to respond to usual work
> situations and routine changes, the record does not support a marked level as
> the claimant was able to take intelligence testing without emotional distress and
> has been able to help in the home and with the children to some degree.
> Further, as stated above, a marked level of limitation is not consistent with the
> conservative level of care received by [Pratt], which has been a medication for
> depression prescribed by his primary medical doctor with no outpatient
> treatment with a mental health professional whatsoever.

(Doc. 14-15, at 20).

      Contrary to Pratt's assertions, substantial evidence supports the ALJ's consideration of

Dr. McNelis and Dr. LaJeunesse's opinions. (Doc. 21, at 15-16). The ALJ explained that Dr.

McNelis's opinion was not consistent with her own findings or the clinical findings in Pratt's

treatment records. (Doc. 14-15, at 19). For example, the ALJ stated that Dr. McNelis's

findings "indicated mild impairment to memory and attention, fair judgment and polite and

cooperative attitude" contrary to her opinion that Pratt "would have marked limitations" in

work-related situations. (Doc. 14-15, at 19). The ALJ also noted that "an induvial with such

a degree of limitation as assessed by Dr. McNelis would be expected to have significant

observable functional limitations" and would require "more intensive treatment." (Doc. 14-15, at 19). Additionally, the ALJ stated that Dr. LaJeunesse's opinion that Pratt experienced marked limitation should be given little weight as it was inconsistent with his treatment records. (Doc. 14-15, at 20). The ALJ pointed to Pratt's polite and cooperative temperament and ability to complete multiple tasks without distress. (Doc. 14-15, at 20). Finally, the ALJ again noted Pratt's "conservative level of care . . . with no outpatient treatment with a mental health professional." (Doc. 14-15, at 20).

The Court is not tasked with revisiting these factual issues, but with determining whether the ALJ provided valid reasons for her evaluations and based her conclusions on substantial evidence. *See Arnold,* 2014 WL 940205, at *1; *Burton*, 512 F. Supp. at 914; *see also Wright,* 900 F.2d at 678. Because the ALJ provided adequate articulation and record support for according "little weight" to the opinion of Dr. McNelis and "partial weight" to the opinion of Dr. LaJeunesse, Pratt's argument on this score is unavailing. (Doc. 14-15, at 19-20); *see Plummer*, 186 F.3d at 429 ("The ALJ must consider all the evidence and give some reason for discounting the evidence that [she] rejects." (quoting *Mason*, 994 F.2d at 1066)).

## V.   CONCLUSION

Based on the foregoing, the Court **AFFIRMS** the Commissioner's decision to deny Pratt disability benefits and directs that **FINAL JUDGEMENT BE ENTERED** in favor of the Commissioner and against Pratt. The Clerk of Court is directed to **CLOSE** this case.

An appropriate Order follows.

Dated: August 16, 2021                    *s/ Karoline Mehalchick*

                                          **KAROLINE MEHALCHICK**
                                          **Chief United States Magistrate Judge**